# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **LONZO RAINEY, Jr. and** | § | |
| **On Behalf of Himself and All Others** | § | |
| **Similarly Situated** | § | |
| | § | |
| **v.** | § | **Case No. 6:06-cv-198** |
| | § | |
| **McWane, Inc. d/b/a Tyler Pipe** | § | |

## MEMORANDUM OPINION ON THE
## MOTION FOR SUMMARY JUDGMENT

Plaintiffs bring this action against Defendant McWane, Inc. d/b/a Tyler Pipe for violation of the Fair Labor Standards Act for failing to pay its production supervisors overtime pay. Pending before the Court is Tyler Pipe's Motion for Summary Judgment (Doc. No. 94). After considering the motion, the response (Doc. No. 102), the reply (Doc. No. 105), oral argument, and additional documents filed with the court (Doc. Nos. 108, 110, 111), for the reasons set out herein, the Court is of the opinion that Defendant's motion should be granted. This is the memorandum opinion that follows this Court's order granting the motion for summary judgment (Doc. No. 112).

## I. Background

Plaintiff Lonzo Rainey, Jr. and the certified collective class (collectively, "Plaintiffs")[1] are production supervisors employed by Tyler Pipe. Plaintiffs all work at Tyler Pipe's

---

[1] The Court previously certified a collective class of all current and former salaried production supervisors and denied Defendant Tyler Pipe's motion to decertify the class.

operating facilities in Tyler, Texas supervising hourly employees who perform unionized manual labor.  The unionized manual laborers work various jobs in the manufacturing of iron pipe and couplings.

Plaintiffs allege that Tyler Pipe violated the Fair Labor Standards Act ("FLSA") by failing to pay Plaintiffs overtime.  Plaintiffs contend that Tyler Pipe misclassified the production supervisor position as an "exempt" position, as defined by the FLSA, and because the position is actually a "non-exempt" position, Plaintiffs are entitled to overtime pay.  Tyler Pipe moved for summary judgment on Plaintiffs' FLSA claims arguing that as a matter of law Plaintiffs are correctly classified as non-exempt employees.

## II. Summary Judgment Standard

A motion for summary judgment should be granted if no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A fact is material if it might affect the outcome of the suit under the governing law.  *Merritt-Campbell, Inc. v. RxP Products, Inc.*, 164 F.3d 957, 961 (5th Cir. 1999).  Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961.  When ruling on a motion for summary judgment, the Court is required to view all inferences drawn from the factual record in the

light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Merrit-Campbel, Inc.*, 164 F.3d at 961.

Under Rule 56, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323–25).  If the moving party fails to meet this initial burden, the motion must be denied regardless of the nonmovant's response.  *Little*, 37 F.3d at 1075.  If the movant meets the burden, however, Rule 56 requires the opposing party to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.  *Anderson*, 477 U.S. at 250; *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996).  The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence.  *Matsushita*, 475 U.S. at 585; *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

### III. Analysis

Under the FLSA, the general rule is that any employee who works more than forty hours in a workweek must receive overtime compensation.  *See* 29 U.S.C. § 207(a)(1) (2000).  However, employers need not pay overtime if the employee is "employed in a bona fide executive, administrative, or professional capacity" as defined by regulations

promulgated by the Secretary of Labor.  *See* 29 U.S.C. § 213(a)(1) (2000); *Mims v. Starbucks Corp.*, Civil Action No. H-05-0791, 2007 WL 10369, at *3 (S.D. Tex. Jan. 2, 2007) (slip opinion).  The employer bears the burden of establishing that an employee falls within one of the exemptions.  *See Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir. 1990).

Tyler Pipe asserts that Plaintiffs, as production supervisors, are "executive employees" exempt under the FLSA.  Under the Department of Labor regulations, an employee qualifies for the executive exemption if the employee:  (1) is paid a salary not less than $455 per week; (2) has a primary duty of management; (3)  regularly directs two or more employees; and (4) has "authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight."  29 C.F.R. § 541.100(a)(1)-(4) (2005); *see Mims*, 2007 WL 10369, at *3.  Plaintiffs admit that they receive a salary in excess of $455 per week and that they direct the work of more than two employees.  Thus, the parties agree that the only two requirements at issue are (2) whether Plaintiffs' "primary duty" was one of management and (4) whether Plaintiffs suggestions and recommendations as to hiring, firing, advancement, promotion, or any other change of status of other employees were "given particular weight."[2]

---

[2] The regulations were revised in 2004 and many Plaintiffs worked as production supervisors both before and after the effective date of the revised regulations.  The revised regulations increased the weekly salary requirement and added the forth requirement.  *See* 29 C.F.R. § 541.1(f) (2004); *see Mims*, 2007 WL 10369, at *3 n.4.  However, the parties agree that, under both the former and current regulations, the two issues are whether Plaintiffs' "primary duty" was management and whether Plaintiffs suggestions and recommendations as to hiring, firing, advancement, promotion, or any other change of

## A. Plaintiff's Primary Duty is One of Management

The Department of Labor regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a) (2005). To determine an employee's "primary duty", courts consider "what [the employee does] that is of principal value to the employer, not the collateral tasks that [he] may also perform, even if [the tasks] consume more than half of [his] time." *Mims*, 2007 WL 10369, at *4 (citing *Dalheim*, 918 F.2d at 1227). The court should consider all of the facts, with a "major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a); *see Jackson v. San Antonio*, No. SA-03-CA-0049—RF, 2006 WL 2548545, at *9 (W.D. Tex. Aug. 31, 2006) (looking to the totality of the circumstances to determine whether an employee was exempt).

A useful guide for determining whether employees qualify for exempt-executive status is whether employees spend more than "fifty percent of their time performing exempt work." § 541.700(b). If employees spend more than fifty percent of their time performing exempt work, employees generally satisfy the "primary duty" requirement. *Id.*; *see Mims*, 2007 WL 10369, at *4.

Under the regulations, "management" work is exempt work. *See* 29 C.F.R. § 541.100 (2005). The regulations provide that "management" includes,

---

status of other employees are given particular weight. *See Beauchamp v. Flex-N-Gate LLC*, 357 F. Supp. 2d 1010, 1013 n.3 (E.D. Mich. 2005) (holding if Defendant can satisfy the new standard, it follows that Defendant could also satisfy the prior "short" test).

activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for safety and security of employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

§ 541.102; *Mims*, 2007 WL 10369, at *3-4.  Therefore, in deciding whether Plaintiffs' "primary duty" was management, the court must examine the tasks performed by Plaintiffs as production supervisors.

Tyler Pipe points to the uncontested evidence that Plaintiffs were responsible for supervising hourly employees, training the hourly employees, directing the work of the hourly employees, apportioning the work among the hourly employees within their department, using discretion in assigning work within their department, ensuring that they had enough employees to reach the production goals,[3] maintaining production records, and

_____

[3] Plaintiffs' testimony reveals that they had to get permission from the production manager or superintendent to get additional help in their department, but this testimony does not negate the evidence that Plaintiffs were responsible for ensuring that Plaintiffs had enough employees to reach their production goals.

monitoring the hourly employees' compliance with the Sexual Harassment Policy.[4]  All of these tasks are considered managerial under the regulations.  *See* § 541.102.

Further, the act of disciplining employees is managerial.  § 541.102.  The parties agree that, as production supervisors, Plaintiffs could not punish the employees. However, the uncontested evidence shows that Plaintiffs initiated the discipline process by sending a "Disciplinary Action" to Tyler Pipe's Human Resources Department ("H.R.").  It is also uncontested that, when Plaintiffs believed that H.R. needed to discipline an hourly employee, Plaintiffs would send the information to H.R. to make the decision regarding the issuance of employee discipline.  Though Plaintiffs could not directly discipline employees, Plaintiffs played an important role in the employee discipline process.

Management work also includes providing for the safety of employees.  *Id.*  The uncontested evidence provided by Tyler Pipe demonstrates that Plaintiffs, within their department, conducted safety meetings with the hourly employees and were responsible for ensuring that the hourly employees followed the safety procedures.  Although Plaintiffs argue that they  were not responsible for providing for the safety and security of the hourly employees, the only evidence Plaintiffs provided to rebut Tyler Pipe's evidence is evidence that Tyler Pipe had a safety department and the safety department helped generate safety

---

[4] Plaintiffs stated in their brief that they were not responsible for monitoring or implementing legal compliance measures, but Plaintiffs failed to provide the Court any evidence rebutting Tyler Pipe's evidence that Plaintiffs were responsible for monitoring the hourly employees' compliance with company policies.

policies.  The mere fact that a safety department exists fails to raise an issue as to whether Plaintiffs  were responsible for providing for the safety of the hourly employees.

Finally, the factors an employer uses to evaluate an employee is evidence of an employee's principal value to the employer and therefore whether the employee is managerial.  *See Mims*, 2007 WL 10369, at *4 (citing *Dalheim*, 918 F.2d at 1227).  Here, Tyler Pipe considered sixteen factors in evaluating Plaintiff's work.  The factors included indicators of the supervisor's ability to lead, delegate, supervise, make decisions, plan and organize, communicate, relate to subordinates, innovate, change, and manage time.  Tyler Pipe also  evaluated Plaintiffs on the training they administered to the hourly employees and on the department safety meetings Plaintiffs conducted.  Tyler Pipe sent Plaintiffs to offsite locations to receive training on enhancing their management and supervisory skills.  Hence, Tyler Pipe evaluated Plaintiffs' management ability, as management is defined in the regulations, which is evidence that Plaintiffs' primary duty was management.  *See* § 541.102.

Plaintiffs contend that they spend the majority of their time following well-established company rules or procedures which have effectively removed discretion from the workplace. Discretion, Plaintiffs argue, has been placed with controlled responses and predictable results, and therefore, Plaintiffs are misclassified as exempt-executive employees.   In making that argument, Plaintiffs failed to point to any legally competent evidence illustrating that conclusion.  Furthermore, even if Plaintiffs produced some evidence to support their conclusion, "nothing in the governing regulations or relevant case law requires that a

supervisor must have unfettered discretion in the performance of his management duties in order to be deemed an 'executive.'" *Beauchamp v. Flex-N-Gate LLC*, 357 F. Supp. 2d 1010, 1016 (E.D. Mich. 2005) (responding to the same argument raised by Plaintiffs in this case).

Plaintiffs argue that the evidence shows that they performed non-management tasks by doing hourly bargaining work.  But, as demonstrated by the evidence, no Plaintiff spent as much as fifty percent of his time performing bargaining work; Plaintiffs spent most of their time supervising the hourly employees and performing other various management activities.[5]  Further, Plaintiffs stated that when they performed the non-management work it was often for training an employee and in cases of emergency.  The regulations specifically provide that an employee will not lose his exempt status for performing non-management work in the case of an emergency or while teaching by example.  § 541.706; s*ee Mims*, 2007 WL 10369, at *4.  Therefore, the evidence that some Plaintiffs spend time performing manual labor does not raise a genuine issue of material fact as to whether Plaintiffs' "primary duty" was management.

Tyler Pipe showed through uncontested evidence that Plaintiffs' "primary duty" was performing a number of those management activities listed in the regulation.  In response, Plaintiffs failed to the produce any legally competent evidence raising a genuine issue of

---

[5] *See* Rerich aff. at ¶ 5; Jackson depo. p. 32:13-15, pp. 61:10-62:4; Bennett depo. pp. 25:4-26:24, pp. 32:12-34:18; Choice depo. pp. 73:16-74:21; Rainey depo. pp. 130:9-131:3; Tucker depo. pp. 25:25-26:4; Hawkins depo. p. 35:1-12; Carlton depo. p. 90:1-12; Caldwell depo. pp. 27:1-30:16; Sample depo. p. 37:14-18.

material fact as to whether Plaintiffs' "primary duty" was management.   Therefore, Defendant is entitled to judgment as a matter of law on this issue.

### B. Plaintiffs Suggestions and Recommendations as to Change in Status are Given a Particular Weight

Next, the Court considers whether Plaintiffs had the "authority to hire or fire other employees or their suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight." § 541.100(a)(4).  Under the regulations, "[a]n employee's suggestions and recommendations may still be deemed to have "particular weight" even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." § 541.105.

Tyler Pipe contends that Plaintiffs suggestions and recommendations as to hiring, firing, and other changes in status of other employees are given particular weight.  The uncontested evidence demonstrates that Tyler Pipe's Human Resources Department ("H.R.") does the initial hiring, but Tyler Pipe charges Plaintiffs with the responsibility of performing weekly evaluations on the newly hired employees for the first ninety days of the employees' employment.  Plaintiffs stated that the weekly evaluations are used to determine which new employees will become permanent employees and which employees Tyler Pipe will transfer out of a particular department.  Several of the plaintiffs attested to the fact that upon unfavorable recommendations, Tyler Pipe transferred those employees from their department.

Additionally as discussed earlier, Plaintiffs initiate the disciplinary process by filing a disciplinary action with H.R..  Plaintiffs stated that they could only remember a few times where H.R. did not punish an employee after they sent a Disciplinary Action.

Tyler Pipe's hiring and discipline process is similar to the scheme in *Beauchamp v. Flex-N-Gate LLC*, 357 F. Supp. 2d 1010  (E.D. Mich. 2005).  In that case, the company initially hired the workers but the supervisors preformed evaluations to determine whether the employee should continue working for the employer.  *See id.* at 1016.  Additionally, in *Beauchamp*, the supervisors typically initiated the disciplinary process that would lead to an employee's discharge.  *Id.*  The Michigan Court found this to be enough to comport with the regulatory requirement than an executive's suggestions and recommendations as to hiring and firing were given particular weight.  *Id.*  Here, the Court agrees with the Michigan Court and holds that Plaintiffs suggestions and recommendations as to whether an employee would become permanent, transfer departments, and receive discipline satisfies the fourth element that Plaintiffs suggestions and recommendations as to hiring, firing, and other changes in status of other employees were given particular weight.  Because Plaintiffs failed to produce any legally competent evidence raising a genuine issue of material fact as to this issue, Tyler Pipe is entitled to judgment as a matter of law on this issue.

## IV. Conclusion

Because all factors for the executive exemption are satisfied, the Court finds that no genuine issue of material fact exists and that Defendant is entitled to judgment as a matter

of law on all claims alleged in the pleadings.  It is therefore ORDERED, ADJUDGED, and

DECREED that Defendant Tyler Pipe's motion for summary judgment be, and hereby is, in

all things GRANTED.

   **It is SO ORDERED.**

   **SIGNED this 27th day of March, 2008.**


MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE

12/12